**E-filed on:** ___3/27/09___

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re BEA SYSTEMS, INC. DERIVATIVE LITIGATION<br><br>_____<br><br>This Document Relates To:<br><br>    ALL ACTIONS. | No. C-06-04459 RMW<br><br>ORDER GRANTING VOLUNTARY MOTION TO DISMISS AND DENYING MOTION FOR ATTORNEYS' FEES<br><br>**[Re Docket No. 71, 72]** |

The plaintiffs in these consolidated cases, Musto Family Trust, Vincent Musto, George T. Barcheski and Catherine Molner ("Plaintiffs"), brought shareholder derivative suits on behalf of BEA Systems, Inc. ("BEA") alleging that certain current and former directors and officers of BEA improperly backdated stock options. Nominal defendant BEA repeatedly moved to dismiss; each time the Plaintiffs did not oppose the motion but sought leave to file an amended complaint. Meanwhile, events within BEA have led to a restatement of earnings, a repricing of stock options, a repayment of around $25 million from stock option recipients, and now a merger. Accordingly, the Plaintiffs have moved to voluntarily dismiss this suit. BEA does not oppose the motion to dismiss the suit, and the court grants the motion to dismiss.

United States District Court
For the Northern District of California

1    Plaintiffs have also filed a motion seeking their attorneys' fees and expenses incurred in

2    bringing the suit, arguing that their lawsuit caused BEA to change its practices and recoup the

3    money.  This motion, BEA opposes.  The court has reviewed the papers and considered the

4    arguments of counsel.  For the following reasons, the court denies the motion for attorneys' fees and

5    expenses.

6    **I.  BACKGROUND**

7    By the spring of 2006, BEA, like many Silicon Valley companies, found itself entangled in

8    allegations of stock option backdating.  In May, BEA's audit committee asked management to begin

9    an internal review of BEA's stock option granting practices.  Decl. of Betty Chang Rowe, Docket

10   No. 77, Ex. 3 ¶ 1 (Decl. of Robert F. Donohue) ("Donohue Decl.").  On July 18, 2006, BEA's Vice

11   President, Legal Robert F. Donohue reported to the board on the review's status.  *Id.* ¶ 2.  The board

12   directed Mr. Donohue to continue the investigation, to discuss its findings with BEA's accountants

13   Ernst & Young, and to report back to the board.  *Id.*  Meanwhile, George T. Barcheski filed the first

14   derivative lawsuit on July 20, 2006, two days after the board meeting that charged Mr. Donohue to

15   continue his investigation.  *See* Docket No. 1.  Mr. Donohue did not learn of the lawsuit until July

16   26.  Donohue Decl. ¶ 3.

17   Over time, the internal review turned into a full investigation into BEA's historical option

18   granting practices.  *Id.* ¶ 4.  The investigation cost BEA $6.8 million in its 2007 fiscal year and

19   another $7.3 million in FY 2008.  *Id.* ¶ 5.  On February 14, 2007, BEA announced the results of its

20   investigation in a press release.  Rowe Decl., Ex. 5.  The audit committee's outside counsel, Simpson

21   Thacher & Bartlett LLP, reviewed over 30,000 option grants to over 12,000 employees.  *Id.*  The

22   audit committee concluded that many stock options grants were improperly recorded and that the

23   company failed to properly account for many options grants.  *Id.*  These failures resulted in the

24   company recording a $340 million to $390 million compensation expense.  *Id.*  The audit committee

25   also recommended, and the board approved, the reconstitution of the compensation committee, the

26   restructuring of the human resources department, and the strengthening of the General Counsel's

27   office.  *Id.*  Furthermore, various officers repaid the company their gains from mispriced stock

28   options.  *Id.*  One of these officers, CEO Alfred Chuang, was (and remains) a board member.  *Id.*

Finally, "all current independent directors of the Company who have received options that were mis-priced voluntarily have agreed to re-price all such outstanding options to the price associated with the correct measurement dates, as determined by the Audit Committee.  None of these directors has realized any gain from the exercise of any mis-priced options." *Id.*

Following this announcement, the Plaintiffs submitted an amended complaint on March 12, 2007. *See* Docket No. 39.  BEA moved to dismiss this complaint, but the motion was never heard because the parties stipulated to allow the Plaintiffs to file a second amended complaint.  The second amended complaint was filed on November 9, 2007 and included claims against BEA directors for failing to accept a merger offer from Oracle, in addition to the backdating claims.  *See* Second Amended Complaint, Docket No. 57 ("SAC").  The second amended complaint alleged that BEA had recouped only a "pittance" from its CEO, Mr. Chuang.  *Id.* ¶ 96.  The Plaintiffs also alleged that BEA had "not taken sufficient remedial efforts beyond the insignificant givebacks and repricings to recover the full amount of damages[.]" *Id.* ¶ 131.  The Plaintiffs further alleged that demand on the board was excused based on the board's "total failure, over more than fourteen months, to remedy the misconduct described herein, despite their ongoing 'investigation.'" *Id.* ¶ 170.

Since then, Oracle raised its bid for BEA, and on January 16, 2008, the company announced that it approved Oracle's offer.  On April 4, 2008, 99.9% of shareholders voted in favor of the merger.  BEA will soon cease to exist.

## II.  ANALYSIS

### A.    Choice of Law

The parties begin by disputing whether the law of Delaware (BEA's state of incorporation) or federal common law govern the Plaintiffs' request for attorneys' fees.  The Plaintiffs urge that Delaware law controls, while BEA argues in support of federal law, though both parties concede that "Delaware and federal law are in accord on the issue of derivative counsel fees." *In re Oracle Securities Litigation*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994) (Walker, J.).  Absent a conflict between Delaware and federal law, this court will not address the issue.  *Id.*; *see Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982) (declining to decide whether California law or federal common law applied to attorney's fees request in shareholder derivative suit where the parties could not

ORDER GRANTING VOLUNTARY MOTION TO DISMISS AND DENYING MOTION FOR ATTORNEYS' FEES
C-06-04459 RMW
TSF                                                                                  3

distinguish the substantive law).

**B.      The Common Benefit Doctrine**

Parties must normally bear their own litigation costs.  *Chrysler Corp. v. Dann*,  223 A.2d 384, 386 (Del. 1966); *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980); *see also Oracle*, 852 F. Supp. at 1445 (explaining the American Rule and the common benefit exception).  An exception exists for litigation that creates a shared benefit, for example, where a shareholder's lawsuit on behalf of the corporation creates a benefit that inures to all shareholders. *Chrysler*, 223 A.2d at 386. Even an unsuccessful lawsuit (for example, if mooted by the defendant's conduct) can justify recovering attorney's fees. *Id.*  "This does not mean, however, that the mere filing of a derivative action against a corporation will justify the award of fees to plaintiff's counsel." *Id.* at 386-87.  To justify an award of attorney's fees, the plaintiffs must demonstrate that (1) "the suit was meritorious when filed;" (2) the defendants' actions benefitting the corporation occurred prior to "judicial resolution" of the lawsuit; and (3) "the resulting corporate benefit was causally related to the lawsuit." *Allied Artists Pictures*, 413 A.2d at 878; *see also United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

BEA argues that the Plaintiffs' lawsuit was not meritorious "when filed" and that Plaintiffs' lawsuit did not cause the audit committee's investigation, restatement, and recoupment.  As the court's holding rests on the first ground for BEA's opposition, the court does not address whether the Plaintiffs' lawsuit "caused" the corporation's actions.

**C.      "Meritorious When Filed"**

The reality of shareholder derivative litigation is that complaints are frequently amended. At the time of the Plaintiffs' voluntary dismissal, they had filed a complaint, an amended complaint, and a second amended complaint.  For the purpose of awarding fees under the common benefit doctrine, a complaint is "meritorious" if it can withstand a motion to dismiss. *Chrysler*, 223 A.2d at 387.[1]  But that raises the question – which complaint?

---

[1]     The *Chrysler* decision also suggests that "the plaintiff [must] possess[] knowledge of provable facts which hold out some reasonable likelihood of ultimate success."  223 A.2d at 387. BEA's opposition focuses on whether the Plaintiffs' complaint would have survived a motion to

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    BEA argues that the court must consider the merit of the Plaintiffs original complaint, and

2   notes the Delaware Supreme Court's discussion in *Chrysler*.  The court there observed that merely

3   filing a complaint cannot justify fees, and that "[m]omentary reflection will demonstrate that to do

4   so would encourage the filing of many such actions wholly lacking merit for the sole purpose of

5   obtaining counsel fees." *Id.*  Further, "[t]o justify an allowance of fees the action in which they are

6   sought must have had merit *at the time it was filed*.  It may not be a series of unjustified and

7   unprovable charges of wrongdoing to the disadvantage of the corporation." *Id.* (emphasis added).

8   Since *Chrysler*, courts have repeated the test and stated that the complaint must be  "meritorious

9   when filed." *E.g.*, *Allied Artists Pictures*, 413 A.2d at 878 (1980); *United Vanguard Fund*, 693 A.2d

10  at 1079 (1997); *Cal-Maine Foods, Inc. v. Pyles,* 858 A.2d 927, 929 (Del. 2004).  Yet neither side has

11  cited to the court any case construing the "when filed" aspect of the common benefit test established

12  in *Chrysler*.

13     The Delaware Court of Chancery has discussed the "when filed" requirement in dictum.

14  *Bird v. Lida, Inc.*, 681 A.2d 399, 404-05 (Del. Ch. Ct. 1996).  The court stated,

15      The "when filed" restriction is intended, I suppose, to preclude fee awards in cases
        that do not have "merit" (in the sense of *Dann v. Chrysler*) when filed, even if
16      discovery later shows the existence of a litigable and settleable case.  Thus the "when
        filed" term means to discourage derivative suits brought as a "fishing expedition" by
17      denying the award of fees in such cases, even if they are later settled on beneficial
        terms (as may happen either because one may stumble on an arguable wrong or
18      because strike suits are sometimes rationally dealt with in that way).

19  *Id.* at 405.  In a more recent case, the court criticized the premature filing of derivative complaints.

20  *In re Cox Communications, Inc. Shareholders Litigation*, 879 A.2d 604 (Del. Ch. Ct. 2005) (Strine,

21  V.C.).  The court then criticized a request for attorneys' fees because the complaint filed at the start

22  of the lawsuit was not meritorious.  *See id.* at 636.

23      Put simply, when the plaintiffs filed their complaint they were not attacking any
        completed fiduciary decision. They were attacking a target that, by its very nature,
24      was moving. The only purpose of their complaints was to act as a placeholder for a
        possible later attack on an actual fiduciary judgment of the Cox board to enter into a
25      formal merger agreement with the Family.

26  *Id.* at 636-37.

27

28  dismiss and does not address this possible further requirement.

ORDER GRANTING VOLUNTARY MOTION TO DISMISS AND DENYING MOTION FOR ATTORNEYS' FEES
C-06-04459 RMW
TSF                                                    5

United States District Court
For the Northern District of California

1    Interpreting the "when filed" requirement to mean what it says is compelling based purely on

2    its text. But the reasoning of the Delaware Court of Chancery in the cases discussed above convinces

3    this court that sound policy reasons also dictate that the "meritorious when filed" analysis turn on the

4    initial complaint, not a later operative pleading.  Analyzing the complaint at the initial filing

5    discourages "fishing expeditions."[2]  It also discourages plaintiffs from filing meritless claims hoping

6    to obtain attorneys' fees in exchange for dismissing the case.  *See generally In re Cox*

7    *Communications*, 879 A.2d 604.  Finally, it discourages racing to the courthouse to file a

8    "placeholder" complaint when other avenues, like the corporation's own actions, could resolve the

9    problem without litigation.

10    With that in mind, the court turns to the issue of whether Plaintiffs' complaint was

11    "meritorious when filed."  The Plaintiffs did not oppose BEA's motion to dismiss their complaint,

12    and instead sought leave to amend.  When BEA moved to dismiss the Plaintiffs' first amended

13    complaint, the Plaintiffs again abandoned their pleading and sought leave to submit a second

14    amended complaint.  While a motion to dismiss the second amended complaint was pending, the

15    Plaintiffs moved to voluntarily dismiss their case.

16    BEA argues that the Plaintiffs' failure to oppose their motion to dismiss the original

17    complaint is tantamount to an admission that the complaint lacked merit.  Perhaps one could infer

18    this from the Plaintiffs' action, but the court does not wish to discourage a plaintiff from seeking

19    leave to amend in the first instance, as opposed to vigorously opposing (and losing) on a motion to

20    dismiss and obtaining leave to amend after a lengthy motion process.

21    The Plaintiffs' initial complaint is 22 pages long (though this is scanty compared to the

22    seventy page second amended complaint).  Nevertheless, the Plaintiffs' allegations of demand

23    futility are wholly insufficient.  As alleged, BEA's board consists of eight directors.  Docket No. 1,

24    Compl. ¶ 59.  One of the eight directors, BEA CEO Alfred S. Chuang, allegedly received backdated

25    stock options.  *Id.* ¶ 37.  Where particularized allegations demonstrate that a director has received

26    _____

27    [2]    This is a concern shared in the securities fraud litigation context, where Congress dealt with
the issue by imposing a stay on discovery while a motion to dismiss is pending.  *See* 11 U.S.C. §
28    78u-4(b)(3)(B).

United States District Court
For the Northern District of California

1   backdated stock options, there is a reasonable doubt that he or she could disinterestedly consider a

2   demand on the board.  *In re MIPS Techs., Inc. Deriv. Litig.*, — F. Supp. 2d —, 2008 WL 131915, *8

3   (N.D. Cal. 2008).  It therefore follows that Mr. Chuang could not have considered a demand on the

4   board.  But the Plaintiffs' allegations with respect to the remaining directors consisted purely of

5   boilerplate allegations based on the directors' committee membership and signing of financial

6   statements.  *See* Compl. ¶ 37(b)-(d).  Such allegations do not come close to meeting the particularity

7   requirement of pleading demand excuse.  *MIPS*, 2008 WL at *7-*9 (noting that "[demand excuse is

8   a] sensitive inquiry [and] is not amenable to 'boilerplate' pleading" and that committee membership

9   alone does not create a reasonable doubt as to disinterestedness); *see also Desimone v. Barrows*, 924

10   A.2d 908, 938, 942 (Del. Ch. 2007).

11       Even considering the allegations in the Plaintiffs' second amended complaint, the Plaintiffs

12   failed to demonstrate that they should have been excused from making a demand on the board.  *See*

13   Docket No. 57, Second Amended Compl. ¶ 166-174.  On a third attempt to plead demand futility,

14   the best the Plaintiffs could muster (aside from boilerplate committee membership allegations) is

15   that some of the board members once previously worked in the same company as some of the officer

16   defendants, and hence have a "longstanding personal and professional relationship."  *Compare with*

17   *In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917 (Del. Ch. 2003) (demonstrating context where

18   professional affiliations can create doubt as to disinterestedness).  Without belaboring the point, the

19   Plaintiffs have not met their burden of proving that their lawsuit was meritorious when filed because

20   they have not shown that they had a reasonable hope of surviving a motion to dismiss for failure to

21   plead demand excuse.

22       BEA further argues that the Plaintiffs' initial filing lacked merit because the Plaintiffs lacked

23   standing because they could not establish that they were shareholders of BEA when they filed the

24   lawsuit.  The Plaintiffs characterize this as a "minor procedural hurdle that is easily curable by

25   Plaintiffs and should in no way be considered dispositive on the issue of meritoriousness."  Reply at

26   3:13-15.  The Plaintiffs then state that they "are able to demonstrate affirmatively that they satisfy

27   the continuous ownership requirement."  *Id.* at 3:15-17.  The declaration submitted by the Plaintiffs

28   establishes the purchase date of one of the plaintiffs, the Musto Family Trust.  But the Musto Family

1    Trust did not become a plaintiff until the Plaintiffs' third pleading, the amended consolidated

2    shareholder derivative complaint.  *Compare* Docket Nos. 26 (Dec. 4, 2006) *with* 39 (Mar. 12, 2007).

3    The Plaintiffs have not shown that Barcheski and Molner had standing as shareholders at the filing

4    of the initial complaint, or even when the first consolidated complaint was filed.  Indeed, this may

5    explain why the Plaintiffs never opposed BEA's motions to dismiss but instead opted to amend their

6    complaint and add additional plaintiffs.

7         Based on the foregoing conclusion that the Plaintiffs' lawsuit lacked merit when it was filed,

8    the court does not reach whether the Plaintiffs' lawsuit caused BEA's actions or whether the

9    Plaintiffs' requested fees are reasonable.

10                              **III.  ORDER**

11        For the reasons set forth above, the court grants the Plaintiffs' voluntary motion to dismiss

12   and denies the Plaintiffs' motion for attorneys' fees and expenses.

13

14

15   DATED:        3/27/09

                                                 RONALD M. WHYTE
16                                               United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| Aaron H. Darsky | adarsky@audetlaw.com |
| Lawrence Timothy Fisher | ltfisher@bramsonplutzik.com |
| Willem F. Jonckheer | wjonckheer@schubert-reed.com |
| Miranda Kolbe | mkolbe@schubert-reed.com |
| Alan R Plutzik | aplutzik@bramsonplutzik.com |
| Juden Justice Reed | jreed@schubert-reed.com |
| Kathryn Anne Schofield | kschofield@bramsonplutzik.com |
| Robert C. Schubert | rschubert@schubert-reed.com |
| Michael C. Wagner | mwagner@sbtklaw.com |
| Eric L. Zagar | ezagar@sbtklaw.com |
| Nichole T. Browning | nbrowning@sbtklaw.com |
| Aaron H. Darsky | adarsky@audetlaw.com |
| Dustin Lamm Schubert | dschubert@schubertlawfirm.com |

**Counsel for Defendants:**

| | |
|---|---|
| Robert P. Feldman | rfeldman@wsgr.com |
| Ignacio Evaristo Salceda | isalceda@wsgr.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.


**Dated:** _____3/27/09_____          _____
                                                      TER
                                        **Chambers of Judge Whyte**

United States District Court
For the Northern District of California